# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 16-1275V
### Filed: November 6, 2019
UNPUBLISHED

|  |  |
|---|---|
| BETH COOK, on behalf of B.T., a minor child,<br><br>              Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>              Respondent. | Special Master Horner<br><br>Attorneys' Fees and Costs Decision; Guardianship Costs; Guardianship Maintenance Costs |

*Danielle Strait, Maglio Christopher & Toale, PA, Seattle, WA, for petitioner.*
*Althea Walker Davis, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On August 6, 2019, following a decision awarding damages based on the parties' stipulation, petitioner moved for an award of attorneys' fees and costs in the total amount of $44,634.04, including $9,572.75 incurred in guardianship proceedings to establish an estate and trust for B.T. and a further $10,090.50 to be incurred in the future maintenance and discharge of B.T.'s estate. (ECF No. 52.) For the reasons discussed below, I award petitioner attorneys' fees and costs in the amount of $40,543.54.

### I.  Procedural History

Petitioner initiated this action on October 5, 2016, alleging that her minor child, B.T., experienced inflammatory demyelinating polyneuropathy caused by certain vaccinations administered to him on October 24, 2013. (ECF No. 1.) Initially, the

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

parties announced their tentative settlement of this case on March 23, 2018.  (ECF No. 33.)  However, petitioner subsequently advised the court that pursuant to Washington state law, she is required to seek court approval prior to settling her son's claim and to appoint an independent settlement guardian ad litem.  (ECF No. 36.)

Specifically, Washington state law requires that:

In every settlement of a claim, whether or not filed in court, involving the beneficial interest of an unemancipated minor or a person determined to be disabled or incapacitated under RCW 11.88, the court shall determine the adequacy of the proposed settlement on behalf of such affected person and reject or approve it. If a suit for recovery on behalf of the affected person has been previously maintained, then the petition shall be filed in that county, or if no such suit exists, then in the county where the affected person resides, unless either court orders otherwise.

WA SPR 98.16W(a).

Petitioner retained Deborah Holbert to represent her in the establishment of the minor's estate.  On June 25, 2018, petitioner was appointed full guardian of the estate of B.T., an incapacitated person, by order of the Superior Court of Washington County, County of Island.  (ECF No. 37-2; Ex. 7.)  The order specifies that the guardianship shall remain in effect until B.T. turns 18 years old.  (Ex. 7, p. 6.)  In accordance with Washington state law, Curtis Coyne was appointed by the court as the settlement guardian ad litem on the same day.  (*Id.* at 9-13.)

On November 25, 2018, the settlement guardian ad litem prepared a report confirming the parties' proposed settlement as reasonable and requesting that the court adopt it.  (ECF No. 52-4; Ex. 11, pp. 16-30.) Notably, however, although the proposed settlement called for a lump sum payment, the settlement guardian ad litem recommended an irrevocable special needs trust with petitioner and a designated trust company as co-trustees, contemplating that final distribution under the terms of the trust would not occur until sometime after B.T. reached 18 years of age. (Ex. 11, p. 27.)  He recommended Gary Gill to draft the trust.  (*Id.* at 27-28.)

On December 17, 2018, the Superior Court of Washington, County of Island, approved the Settlement Guardian Ad Litem Report.  (Ex. 17, pp. 1-2.)  The court required that any disbursed funds be held in a blocked account until a proposed trust had been approved by the court.  (*Id.*)

On January 29, 2019, the parties filed a signed stipulation memorializing their settlement of this case.  (ECF No. 46.)  The stipulation awards petitioner $11,000.00 for her own unreimbursed past medical expenses as well as $154,000.00 in her capacity as guardian/conservator of B.T.'s estate to be used solely for the benefit of B.T. in a manner consistent with Section 15(a) and (d) of the Vaccine Act.  (*Id.* at 2-3.)  The stipulation further requires that petitioner be guardian/conservator of B.T.'s estate

"under the laws of the State of Washington." (*Id.* at 3.)  The stipulation was adopted as the decision of the special master on January 29, 2019, and judgment entered on February 7, 2019.  (ECF Nos. 47, 49.)

On May 20, 2019, the Superior Court of Washington, County of Island, approved petitioner's proposed trust and authorized deposit of the settlement funds into the trust. (Ex. 17, pp. 4-5.)

On August 6, 2019, petitioner filed a motion seeking an award of attorneys' fees and costs pursuant to Section 15(e) of the Vaccine Act.  (ECF No. 52.)  Petitioner seeks the following amounts:

- **$21,572.90** representing attorneys' fees by the firm Maglio, Christopher & Toale, P.A. ("the Maglio firm"), incurred relative to the instant action; and
- **$3,397.89** in costs incurred by the Maglio firm on behalf of petitioner relative to the instant action; and
- **$2,090.50** in attorneys' fees by Deborah Holbert relative to the guardianship proceedings in the Washington Superior Court; and
- **$5,500.00** in fees by Curtis Coyne relative to his acting as court-required, and court-appointed, Settlement Guardian Ad Litem; and
- **$1,982.25** in attorneys' fees by Gary Gill relative to the drafting of trust documents; and
- **$10,090.50** in attorneys' fees by Deborah Holbert relative to future maintenance and discharge of the guardian estate.

(*Id.* at 2-6.)  Pursuant to General Order No. 9, petitioner filed a signed statement confirming that she has not personally incurred any costs relating to this matter.  (ECF No. 52-7; Ex. 14.)

On September 9, 2019, respondent filed a response to petitioner's motion for attorneys' fees and costs.  (ECF No. 56.)  Respondent agreed that the statutory requirements for an award of attorneys' fees and costs have been met and deferred to the special master's discretion regarding the reasonableness of all of the requested fees except for the $10,090.50 requested for future maintenance and discharge of the guardian estate.  (*Id.* at 2-3.)  Respondent requested that the request for fees associated with guardianship maintenance be denied.  (*Id.* at 6.)  Petitioner filed a reply on September 16, 2019.  (ECF No. 57.)

On October 4, 2019, I issued an order requiring petitioner to clarify, as a matter of Washington state law, the interval at which future guardian accounts will be required. (ECF No. 58.)  On November 4, 2019, petitioner filed an order of the Superior Court of

Washington, County of Island, dated October 31, 2019.  (ECF No. 59; Ex. 18.)  That order set the interval for guardian accountings at 36 months.[2]  (*Id.*)

Accordingly, petitioner's motion is now ripe for resolution.

## II.    Fees and Costs Incurred by the Maglio Firm

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  The determination of the amount of reasonable attorneys' fees is within the special master's discretion.  *See, e.g., Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993).  Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs."  *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991).  Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

With regard to the fees and costs generated by counsel of record in the instant action, I have reviewed the billing records submitted with petitioner's request.  In my experience, the request for attorneys' fees and costs incurred by the Maglio firm appears reasonable and I find no cause to reduce the requested hours or rates.  Moreover, as noted above, respondent raised no opposition to this aspect of petitioner's motion, instead deferring to my discretion.  (ECF No. 56, pp. 3-4.)

Accordingly, petitioner is awarded **$24,970.79** to be payable jointly to her and to the Maglio firm, representing $21,572.90 in attorneys' fees and $3,397.89 in costs.

## III.    Prior Fees Incurred by Attorneys Holbert, Coyne and Gill

In addition to the fees and costs generated by the Maglio firm, petitioner also seeks reimbursement of attorneys' fees related to the guardianship proceedings she undertook in order to collect B.T.'s award of damages.  Where, as here, guardianship is incorporated into the terms of an award based on stipulation, special masters have often awarded costs relating to the establishment of the guardianship estate in the form of attorneys' fees.  *See, e.g., Martin v. Sec'y of Health & Human Servs.*, No. 16-318V, 2019 WL 625442 (Fed. Cl. Spec. Mstr. Jan. 22, 2019); *Derenzo v. Sec'y of Health & Human Servs.*, No. 16-35V, 2018 WL 1125231 (Fed. Cl. Spec. Mstr. Jan. 9, 2018); *Cansler v. Sec'y of Health & Human Servs.*, No. 09-596V, 2011 WL 597791, at *3 (Fed. Cl. Spec. Mstr. Feb. 2, 2011); *Finet v. Sec'y of Health & Human Servs.*, No. 03-348V, 2011 WL 597792, at *3 (Fed. Cl. Spec. Mstr. Jan. 31, 2011).

---

[2] Pursuant to RCW 11.92.040(2)-(3), reports are typically due annually within ninety days of the anniversary of the appointment; however, the court has discretion to allow reports at intervals of up to 36 months.

In light of the above-discussed procedural history, I find an award for the costs incurred relative to the establishment of a guardianship estate, as well as approval of the settlement by the settlement guardian ad litem, and establishment of the court-approve trust, to be reasonable.  Notably, all of these incurred fees are attendant to the stipulated requirement that petitioner be the legal guardian/conservator of the estate of B.T. and the requested amounts have already been authorized by the Superior Court of Washington for disbursement out of B.T.'s award of damages.  (ECF No. 52-10; Ex. 17.)

Moreover, each of the three attorneys participating in the guardianship proceedings – Ms. Holbert as petitioner's counsel, Mr. Coyne as the settlement guardian ad litem, and Mr. Gill as drafter of the trust documents – has submitted detailed billing records indicating their hourly rates and hours billed.  (ECF No. 52-3; Ex. 10; ECF No. 52-4; Ex. 11; ECF No. 52-5; Ex. 12.)  I have reviewed the billing records submitted with petitioner's request.  In my experience, these requests for attorneys' fees and costs appear reasonable and I find no cause to reduce the requested hours or rates.  Additionally, as noted above, respondent raised no opposition to this aspect of petitioner's motion, instead deferring to my discretion.  (ECF No. 56, pp. 3-4.)

Accordingly, petitioner is awarded **$2,090.50** to be paid jointly to petitioner and her attorney, Deborah Holbert, **$5,500.00** to be paid jointly to petitioner and the Estate of B.T. for fees from attorney Curtis Coyne, and **$1,982.25** to be paid jointly to petitioner and the Estate of B.T. for fees from attorney Gary Gill.

## IV.   Fees by Attorney Holbert for Future Maintenance and Discharge

Lastly, petitioner seeks reimbursement of *future* costs associated with maintaining and discharging B.T.'s estate.  In support of this request, petitioner submitted a letter from The Law Office of Deborah Holbert, PLLC, documenting the fees and costs associated with maintaining and discharging B.T.'s estate.  (ECF No. 52-6; Ex. 13.)

### a.  Availability of fees for future maintenance and discharge of the estate

There have been several prior decisions in which special masters have addressed future maintenance and discharge costs and arrived at differing conclusions. *See, e.g.*, *Martin*, 2019 WL 625442 (awarding costs associated with prepayment of a bond required for maintenance of guardianship); *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689 (Fed. Cl. Spec. Mstr. May 13, 2014) (denying costs for annual reports).  A significant issue in these cases has been whether the specific language Section 15(e)(1) of the Vaccine Act, allowing for reasonable attorneys' fees and costs "incurred on any proceeding on such petition," allows for costs that are legally required, but which have not yet occurred.

Most recently, this issue was taken up by the Federal Circuit in *McCulloch v. Secretary of Health & Human Services*, 923 F.3d 998 (Fed. Cir. 2019).  In that case, the special master had awarded future guardianship maintenance expenses made

necessary under Florida law.  Respondent did not challenge the initial costs of establishing the guardianship, but argued that the "incurred in" language of Section 15(e)(1) excludes future payments for guardianship maintenance because they have yet to be made.  *McCulloch*, 923 F.3d at 1002.

The Federal Circuit rejected that argument.  Specifically, citing *Black v. Secretary of Health & Human Services*, 93 F.3d 781 (Fed. Cir. 1996), which addressed the phrase "incurred reasonable expenses" in a different, subsequently amended, section of the Vaccine Act, the *McCulloch Court* reasoned:

> *Black* explains that "[i]n ordinary usage, ... to 'incur' expenses means to pay *or become liable for* them." In one common usage, a person becomes liable for yet-to-arise expenses at the time of undertaking an obligation to pay those expenses if and when they arise. That notion fits the present context much better than the government's notion that no current liability has attached for future years' guardian-maintenance expenses even though maintaining the guardianship is a legal precondition to continuing receipt of the annuity portion of the merits-judgment compensation for [the minor].

*Id.* at 1003 (internal citations omitted) (emphasis original).

Notably, however, the *McCulloch* Court also reaffirmed that the prior *Black* decision does stand for the proposition that "the phrase 'incurred reasonable expenses' . . . 'does not refer to anticipated payments or obligations for which liability has not already attached.'"  *Id.* at 1002 (quoting *Black*, 93 F.3d at 786).  Rather, the Court stressed that the damages award at issue in *McCulloch* included future annuity payments, payment of which was dependent upon maintenance of the guardianship.  *Id.* In that regard, the Federal Circuit noted that the *McCulloch* case differed from a prior decision, *Crespo v. Secretary of Health & Human Services*, 139 Fed. Cl. 231 (2018), wherein the Court of Federal Claims concluded that the award of a lump sum payment required only the establishment, but not the maintenance of, a guardianship estate.[3]  *Id.*

As in *McCulloch*, respondent has not challenged the initial expenses related to establishing the estate in this case, but does oppose an award of the future costs. Respondent argues that in this case there are no ongoing future payments of compensation and therefore no requirement for maintenance of the guardianship as a precondition to receipt of future compensation as was the case in *McCulloch*.  (ECF No.

---

[3] The reasoning in *Crespo* was that the special master's decision awarding damages "only recognized the establishment of [the minor]'s guardianship, not the maintenance of it, as an essential prerequisite for [the minor]'s guardian to receive the award. Petitioner's but for assertion overlooks the criterion distinguishing costs incurred for obtaining authorization as a legal representative, which is required under the Act, to establish a guardianship, which is required at respondent's behest in a stipulation, from those costs incurred for maintaining the guardianship, which is not."  *Crespo*, 139 Fed. Cl. at 236 (quoting the decision below at 2017 WL 6763078, at * 7).

56, p. 5.)  Accordingly, respondent argues that "petitioner has not established that the fees she seeks here fall within the confines of the Federal Circuit's decision in *McCulloch*. Thus, petitioner's request for future guardianship maintenance fees should be denied." (*Id.* at 6.)

In response, petitioner argues that the Federal Circuit's discussion of the prior *Crespo* case within the *McCulloch* decision was *dicta*.  (ECF No. 57, p. 3.)  Petitioner suggests that "[t]he issue of whether maintenance expenses for a minor's estate may be paid by the NVICP [i.e. National Vaccine Injury Compensation Program] under 42. U.S.C. §300aa-15(e) with the award of a lump sum only was not before the Federal Circuit in *McCulloch*. There is no binding authority on the OSM with these facts." (*Id.*)

Petitioner further argues that:

The requirement for an estate is made to provide some protection over the NVICP awards made to minors and other incapacitated persons. The NVICP, through Respondent and the Court, avails itself of state court protections for such individuals.

Importantly, once triggered by the NVICP award, the Washington state protections of B.T.'s NVICP award cannot be concluded until B.T. turns 18, dies, or exhausts his NVICP funds.  This is true for many, if not most, state court guardian or conservator estates relied upon by Respondent to protect a minor's NVICP award.

(*Id.* at 2-3.)

I agree with petitioner that facts consistent with the instant case have not been examined by the Federal Circuit.  Moreover, although the Federal Circuit in *McCulloch* cited the prior *Crespo* decision as distinguishable, the *McCulloch* Court neither indicated how a case like *Crespo* would be decided nor expressed that future guardianship costs would only be available under the then present facts.  Respondent is therefore unpersuasive in arguing that future guardianship costs are available only when they fall squarely within the confines of the *McCulloch* holding.  Rather, as petitioner notes, there is no binding precedent directly addressing the instant set of facts.  Nonetheless, the *McCulloch* decision does provide significant guidance in that the Federal Circuit has indicated that the "incurred" language of Section 15(e)(1), though it does not include anticipated expenses for which liability has not yet attached, may be interpreted as including yet-to-arise expenses in at least some circumstances, explaining in relation to Section 15(e)(1) that "a person becomes liable for yet-to-arise expenses at the time of undertaking an obligation to pay those expenses if and when they arise."  *McCulloch*, 923 F.3d at 1003.

In this case, the proceedings before the Office of Special Masters and the Superior Court of Washington are not easily separated.  As described above, the stipulation executed by the parties requires not merely that the petitioner be an estate

guardian generally, but specifically that petitioner be guardian of the estate of B.T. "under the laws of the State of Washington." (ECF No. 46, p. 3.) For reasons dictated by Washington state law and to advance resolution of this case, petitioner became guardian of B.T.'s estate in advance of the parties' execution of their stipulation resolving this case and filed the order of appointment on June 28, 2018. (ECF No. 37-2; Ex. 7.) That order of appointment makes clear that the guardianship *shall* continue until B.T. reaches majority age, that approved and reasonable legal fees may be paid out of estate assets (*i.e.* $1,850 in fees for Ms. Holbert were approved for deduction for estate assets upon creation of the estate), and that guardian accounts will be required at maximum intervals of 36 months by operation of RCW 11.92.040(2)-(3).[4] (Ex. 7, p. 7.) Moreover, the report of the settlement guardian ad litem, required by Washington state law and approved by the Washington court prior to full execution of the stipulation, further confirms that B.T.'s award, though a lump sum, will remain in trust, that reimbursement of at least some legal fees from the NVICP was anticipated by the approving court, and that any legal fees not reimbursed by the NVICP will be deducted from the corpus of B.T.'s damages award.[5] (ECF No. 52-4; Ex. 11, p. 29.)

In other words, at the time the parties' stipulation conditioned payment of B.T.'s lump sum award on petitioner being guardian of the estate of B.T. in accordance with Washington state law, the conditions of maintenance and discharge of the estate had already become concrete, apparent, and attached to B.T.'s estate by operation of court order by the Superior Court of Washington, County of Island. Moreover, absent that court's approval, it does not appear that petitioner would have been able to resolve this case on the stipulated terms. *See* WA SPR 98.16W(a). This context renders the line drawn in *Crespo* between establishment and maintenance of the estate as a prerequisite to payment much more difficult to draw in this case.

Thus, although the award in this case was a lump sum only, at the time of full execution of the stipulation B.T.'s estate had necessarily become liable for any costs associated with a minimum number of future guardian accounts by operation of the laws of the State of Washington and by specific order of the probate court overseeing B.T.'s estate, approval by that court having been necessary to finally executing that settlement in the first place. Notwithstanding that B.T.'s award was a lump sum, I view this circumstance as consistent with the understanding of "incurred" as articulated by the *McCulloch* court. Accordingly, I find that reasonable fees to cover future maintenance and discharge of B.T.'s estate is appropriate in this case.

---

[4] The court later confirmed in a subsequent order that guardian accounts will be required at 36-month intervals and that the next account is due September 25, 2021. (Ex. 18.)

[5] To be clear, the future maintenance and discharge fees at issue here were not discussed in the settlement guardian ad litem's recommendation; however, the Washington Superior Court has consistently directed the guardian to disburse reasonable attorneys' fees out of the estate assets notwithstanding that reimbursement from the NVICP has not yet been determined. (*See, e.g.* Ex. 17.)

### b.  Amount of the award for future maintenance and discharge of the estate

Ms. Holbert estimated that each guardianship report required by the court will cost approximately $2,000.00, which she indicated represents 10 hours at $200 per hour.  (Ex. 13.)  I find that petitioner's representation as to the cost of each accounting is reasonable.  Of note, the calculation is consistent with the fees and costs already generated by Ms. Holbert in connection with B.T.'s estate and already approved by the Superior Court of Washington.

Subsequent to petitioner's filing of her motion for attorneys' fees and costs, the Superior Court of Washington issued an order confirming that the accounting interval for B.T.'s estate at every 36 months, the minimum allowable under Washington state law. (Ex. 18.)  Accordingly, only three future accountings will be necessary – one in 2021, one in 2024, and a final accounting when the estate closes in 2027.[6]

Thus, I find that $6,000.00 represents a reasonable amount to cover the fees associated with future maintenance and discharge of B.T.'s estate.[7]  Accordingly, petitioner is awarded **$6,000.00** to be paid jointly to petitioner and the Estate of B.T. for attorneys' fees associated with the maintenance and discharge of B.T.'s estate.

### V.  Conclusion

For all the reasons discussed above, I award petitioner reasonable attorneys' fees and costs pursuant to Section 15(e)(1) of the Vaccine Act in the reduced amount of $40,543.54 as follows:

- **A lump sum of $24,970.79 in the form of a check payable to petitioner and petitioner's counsel, Danielle A. Strait, Esq.**, to be forwarded to Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota, Florida 34236; and

---

[6] Petitioner had assumed an accounting would be filed every two years, requiring a total of four. (Ex. 13.) Pursuant to RCW 11.92.040(2)-(3), reports are typically due annually within ninety days of the anniversary of the appointment; however, the court has discretion to allow reports at intervals of up to 36 months.  An additional report is due within 90 days of the termination of the guardianship appointment.

[7] In her letter, dated August 2, 2019, Ms. Holbert indicated that $2,090.50 of the requested amount represents costs to prepare the initial guardianship report which was required within 60 days of deposit of the settlement funds and which she confirmed as "completed."  (Ex. 13.)  No billing records were filed to support an award for these prior services and so they are not awarded.  *See, e.g., Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009) (noting that fee applicants bear the burden of establishing entitlement to an award by documenting appropriate hours expended.)  Notably, however, the amount of $2,090.50 corresponds to the outstanding balance of Ms. Holbert's past invoices which are current through May 31, 2019.  (Ex. 10, p. 5.)  Thus, it may be that in calculating her request for fees and costs, petitioner inadvertently double-counted Ms. Holbert's request for fees for Ms. Holbert's previously-rendered services.

- **A lump sum of $2,090.50 in the form of a check payable to petitioner and petitioner's guardianship counsel, Debora Holbert, Esq.**, to be forwarded to Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota, Florida 34236; and

- **A lump sum of $13,482.25 in the form of a check payable to petitioner and the Estate of B.T., representing $5,500.00 in reimbursement of fees by Curtis Coyne, Esq., $1,982.25 in reimbursement of fees by Gary Gill, Esq., and $6,000.00 in reimbursement of maintenance and discharge fees to be incurred for guardian accounts in 2021, 2024, and 2027**, to be forwarded to Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota, Florida 34236.

The clerk of the court shall enter judgment in accordance herewith.[8]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.